HAROLD V. BOMAR, APPELLANT, v. UNITED
RESORT HOTELS, INC., RESPONDENT.

No. 6591

June 7, 1972                                    497 P.2d 898

---

[Rehearing denied August 11, 1972]

*Foley Brothers,* of Las Vegas, for Appellant.

*Cromer and Barker,* of Las Vegas, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

Bomar brought suit against United Resort Hotels, Inc., d.b.a. Stardust Hotel, to recover damages for injuries sustained when he fell on a step exiting from the hotel. The jury found against him and this appeal followed.

1. The trial court precluded plaintiff's counsel from cross-examining a defense witness to show that the step was painted by the hotel shortly after the accident. This is asserted to be reversible error. Although acknowledging that safety measures taken after the accident by the defendant are generally not admissible to prove antecedent negligence or an admission of negligence, Alamo Airways, Inc. v. Benum, 78 Nev. 384, 392, 374 P.2d 684 (1962), this rule, he contends, does not here govern, since defense counsel "opened the door" to such cross-examination when he asked a defense witness whether there had been any change in the step since 1955, and the witness responded "no sir, there hasn't."

In our view the door was opened, however slightly, and counsel should have been allowed to pursue his cross-examination to contradict or impeach the testimony given by the adversary witness. This is a recognized exception to the general rule expressed in Alamo Airways, Inc. v. Benum, supra. Daggett v. Atchinson, Topeka and Santa Fe Ry. Co., 313 P.2d 577 (Cal. 1957); Reynolds v. Maine Mfg. Co., 128 A. 329 (N.H. 1925); Lombardi v. Yulinsky, 119 A. 873 (N.J. 1923); Jefferson v. City of Raleigh, 140 S.E. 76 (N.C. 1927).

It does not automatically follow, however, that the error thus committed affected the substantial rights of the plaintiff Bomar. Indeed, the record contains references to the fact that the step was not painted at the time of the accident, that it was subsequently painted and that a recommended procedure would have been to paint it. In these circumstances the error in forbidding cross-examination on the subject to impeach an adversary witness must be deemed harmless. NRCP 61. That evidence was before the jury in other ways.

2. The jury could not agree whether the defendant was negligent and passed on to the question of the plaintiff's contributory negligence, finding by a nine to three vote, that he was contributorily negligent and precluded from recovery. In short, the jury attempted to resolve the issues in the sequence suggested by the court but was unable to reach agreement on the first issue. We cannot fault the jury for proceeding to the second issue and deciding the litigation.

Affirmed.

ZENOFF, C. J., and BATJER, J., concur.

MOWBRAY, J., dissenting:

The appellant-plaintiff, Harold V. Bomar, commenced this action against United Resort Hotels, Inc., and Karat, Inc., dba Stardust Hotel, to recover damages for injuries suffered when Bomar slipped and fell on a step leading to his hotel room at the Stardust. The case was tried to a jury that found against Bomar, denying him any relief whatsoever.[1] Bomar has appealed from the judgment on the verdict and the court's order denying his motion for a new trial, on two grounds: (1) The trial judge erred in refusing to permit Bomar's counsel to cross-examine one of respondent's witnesses regarding the changed condition of the step on which Bomar had slipped, and (2) the judge erred in refusing to grant a new trial because of alleged irregularities on the part of the jury.

I would sustain appellant's first assignment of error and on that ground reverse and remand the case for a new trial.

1. After Bomar's accident, the hotel painted the step on which he had slipped. Bomar tried to bring out this fact on his case-in-chief, as evidence of negligence on the part of the hotel. The trial judge properly excluded the offer, as the suggested testimony was clearly inadmissible for that purpose. It has long been the rule that safety measures taken after an accident, which might have prevented the accident, are not admissible. This is so, not because of the probative significance such evidence might have, but because of the overriding policy against discouraging the taking of such safety measures after an accident has occurred. As this court stated in Alamo Airways, Inc. v. Benum, 78 Nev. 384, 392, 374 P.2d 684, 688 (1962):

"It is conceded that for many years in 47 states evidence of repairs, alterations, or other precautions taken after an accident has been held inadmissible either as proof of antecedent negligence or as an admission of negligence. The reason for the virtual unanimity is that the admission of such evidence would discourage all owners, even those who had been genuinely careful, from improving the place or thing that had caused the injury, because they would fear the evidential use of such acts to their own disadvantage, and that innocent persons would suffer by such refraining from improvements. . . ." (Citation omitted.)

Therefore, the district judge ruled correctly in refusing Bomar's offer to prove that the step had been painted after

---

[1]At the close of the trial and before the case went to the jury, the district judge, upon defense counsel's motion, dismissed Karat, Inc., as a party defendant.

the accident for the purpose of showing the existence of a negligent condition.

2. Mr. Kermit Roosevelt McCulloch was called as a witness for the defense. He was and had been for many years a maintenance engineer at the Stardust. Mr. McCulloch was asked the following questions on direct examination:

"Q. [by Mr. Cromer, defendant-respondent's attorney] Mr. McCulloch, let me show you a picture that has been admitted into evidence as Plaintiff's Exhibit No. 1 [a photograph showing the front elevation of the step on which Bomar allegedly slipped] and ask you if you recognize that area from that picture?

"A. Yes, sir. This is leading into the south wing of the old Royal Nevada. It's right by Room No. 122.

"Q. Do you know when that area was first built?

"A. Around 1952 or '53.

"Q. Was that area in existence when you first started to work for the Royal Nevada?

"A. Yes, sir.

"Q. Is that exactly as it appears in that picture?

"A. Right.

"Q. The concrete walkway was in there?

"A. Right. Yes, sir.

"Q. The porch?

"A. Yes, sir.

"Q. And the doors?

"A. Yes, it's the same.

"Q. Has the structure of that area changed since 1955 when you started to work for the Royal Nevada until this time?

"A. No, sir.

"Q. It's still the same now?

"A. Yes, sir.

"Q. How many times have you been in and out of that particular righthand door?

"A. Well, probably two or three times a day.

"Q. Since 1955?

"A. Right.

"Q. Have you ever had occasion to stumble or fall in that area?

"A. No, sir, I haven't.

". . .

"Q. Has there been any change other than growth in the shrubbery so far as you can recall since 1955?

"A. No, sir, there hasn't.

"Q. Have you ever had occasion to observe, in making

your rounds three times a day since 1955, anybody falling or stumbling off that particular area?

"A. No, sir.

"Q. Do you know whether anyone has fallen or stumbled off this area with the exception of Mr. Bomar?

"MR. FOLEY: Your Honor, I would object to that?

"THE COURT: Objection overruled. He can state of his own knowledge whether or not he knows whether anyone fell off of that platform other than Mr. Bomar at the time he went to work there.

"Q. [By Mr. Cromer] Answer the question, please.

"A. No, sir."

Counsel for Bomar, on cross-examination, attempted to examine McCulloch on the painting of the step after the accident, but he was effectively prevented from doing so by the trial judge, who was of the apparent opinion that the inquiry on direct went only to "structural changes" of the area and that the direct questioning did not sufficiently open the door to permit inquiry concerning the painting.[2]

Bomar claims that the trial judge's refusal to permit him to inquire constituted reversible error. There are well recognized exceptions to the exclusionary rule mentioned above. McCormick on Evidence § 275, at 667–668 (E. Cleary ed. 1972), has summarized the exceptions as follows:

". . . [E]vidence of subsequent repairs or changes has been admitted as evidence of the defendant's ownership or control of the premises or his duty to repair where these are disputed; as evidence of the possibility or feasibility of preventive measures, when properly in issue; as evidence, where the jury has taken a view, or where the defendant has introduced a photograph of the scene, to explain that the situation at the time of the accident was different; as evidence of what was done later to show that the earlier condition as of the time of the accident was as plaintiff claims, if the defendant disputes this; as evidence that the faulty condition, later remedied, was

[2]"Q. [by Mr. Foley, counsel for plaintiff-appellant] I believe Mr. Cromer showed you Exhibit 1. Is that the picture he showed you?

"A. Yes, sir.

"Q. And I believe you answered, in response thereto, that is in the same condition now as it was as is shown in that picture?

"THE COURT: The structural picture was the question and the answer as I understood it, Mr. Foley.

"MR. FOLEY: I thought he said the same condition.

"THE COURT: The same structural.

"MR. CROMER: The same structural.

"MR. FOLEY: I thought he said the area."

the cause of the injury by showing that after the change the injurious effect disappeared; and as evidence contradicting facts testified to by the adversary's witness." (Footnotes omitted.)

It is clear from reading the aforementioned colloquy on direct examination between counsel for defendant-respondent and Witness McCulloch that the purpose was to convince the jury that the step in question was in the same condition since its construction to the date of the trial and that no one but Bomar had, to McCulloch's knowledge, slipped on the step. It appears to me that to allow a defendant owner to strengthen his case by testimony that the condition was at all times as safe as possible, without affording the plaintiff the opportunity to contradict such evidence, is manifestly unjust. The apparent attempt to stay within the exclusionary rule by narrowing the inquiry to "structural changes" is not enough. The effect of the questioning was to convey the idea that there were no changes in the area and that there had been no accidents on the step either before or after Bomar's slip. I believe that under the factual posture of this case Bomar should have been permitted to examine McCulloch on the painting of the steps and that it was error to preclude him from doing so.

I would reverse and remand the case to the district court for a new trial.

GUNDERSON, J., concurs.